Judge Underwood,
delivered the opinion of the court.
Edward Dorsey of J eííérson county, died many years since, having claims against Mr. Porter of Maryland. Johnsa Dorsey administered on the goods and ciiattles, rights and credits of Edward, situated at the time of ins death, in Maryland. J. Dorsey, as administrator, obtained judgment at law, and ultimately had to resort to a suit in chancery, for the purpose of reaching the real estate in the hands of Porter’s heirs. On the 12th of May, 1819, he received through the hands of Benjamin Lawrence $2,907 18 cents from Monies, the trustee, appointed by the chancellor, to make sale of the estate left by Porter.
J. Dorsey having departed this life, Bazil N. Hobbs who became in this stale administrator de bonis non of Edward Dorsey, filed his bill against the executor of J. Dorsey and his residuary devisees, praying for a decree, causing them to account to him for the money. The original bill was filed on the 28th of June, 1825. In January, 1827, Hobbs amended his bill with leave of the court, upon condition that he, in his individual character paid all the costs which had previously accrued. By the amendment, he claimed a portion of the money received by J. Dorsey, in right of his wife Polly, as. one of the distributees of Edward Dorsey, deceased, and he made the other distributees, defendants. The amendment concludes with a prayer, that the money might be decreed to the distributees of E. Dorsey.
The executor of J. Dorsey likewise, in right of his wife, one of the distributees jof E. Dorsey, answered the original bill, conceding the justice of the complainant’s demand as to part. The other children and residuary devisees of J. Dorsey, deny the complainant’s right to recover altogether, and insist on the stab- *281 Ate -of limitations as a •• bar. The supplemental bill was not answered by those made defendants in the original. ,
It appears that Monies was appointed trustee by the chancellor in Maryland, and directed to make sale of the estate of Joshua Porter, with a view to raise a fund for the payment of his debts. The trustee made his report of sales, and the auditor appointed to settle and report the demands of the litigants upon the fund raised by the sale of the property, slated the debts allowed to Johnsa Dorsey, as administrator of Edward, Dorsey, at the aggregate sum of f>2,907 18 cents. This sum included principal interests and costs, up to the 1st of October, 1813, on which day the trustee sold the estate upon a credit of twelve months, the purchasers giving bond with security, bearing interest from the date, as required by the decree of the court. On the 15th of April, 1818, the auditor’s statement of the accounts was confirmed by the chancellor, and the money directed tobe paid. • The chancellor concludes his order, by directing interest to be paid on the claims allowed by the auditor “in proportion as it has or may be received.”
The circuit court decreed in favor of the complainant against the defendants, for $2,007 18 cents with interest thereon, at the rate of six per cent per annum, from the 1st of October, 1813, up to the 12th of May, 1819, when ,$1,29312 cents, part of the money, was paid to the complainant and which was allowed as a credit of that date. The court then states in the decree, that the ■defendants are enti tied to a further credit for $300 paid, to George Winchester for servicés and fee bills as paid and settled on the said 1st of October, 1813, and that interest be allowed on the balance then due, up" to the time of the decree, amounting to $3,341 59 cents, including principal and interest. This balance, the court decrees to be paid by the executor of Johnsa Dorsey out of the assets in his hands, and in default thereof, then to he paid by the devisees out of the real estate devised or “descended,” and the.personal estate and slaves to them distributed. The •'court then proceeds to give certain data to regulate the proportions of said $3,341 50 cents, which the several devisees 'shall pay; hut in doing this, it so happens, that Ma *282 tilda Dorsey is exonerated altogether, because she had not received from the executors of her father, Johnsa Dorsey her portion of his estafe under the will. The language of the decree is wanting in clearness, in that part of it which gives interest on the whole $2,907 18 cents from the 1st of October, 18,13, up to the 12th of May, 1819, and then allows a credit for $300 as paid on the said first of October. We suppose- the court' meant to allow interest only from the first of October, on $2,607 18 cents, until the payment of the' $1,293 12 cents. No part of Johnsa Dorsey’s estate “descended” to his children. The whole of it was disposed of by his last will, and bis daughter Matilda, although she may not have received her share from the executors, was equally chargeable with the» other devisees for her just proportion of any claim against them. If it was not in her power to pay because her estate yet remained in the hands of the executor, he,.as a parly to the suit, should have been directed to pay fbr her, and thus the burden would have been made lighter upon the rest. Equity required that this should have been done, as the complainant’s claim was sustained.
Wherever the letters of administration are granted, the administrator is responsible tinder the'laws of that co'untry, to dispose of the effects which may come to his hands,-as those laws may require.
International Jaw, requires the distribution oía. decsdent’s effects to be made according to the laws of the country ■where the decedent was domiciled at his deaih. If a decedent js domiciled in -flu» stale at his death, and a person in another stale takes out letters of administration there, on sp much ofthe decedent’s estate as lies within that state; the distributees may, by a suit instituted in that state, compel the administrator, there, to distribute the goods and chattels in Ms hands according to the laws regulating distributions in this state.
*282 But we are of opinion that the whole proceedings from the commencement, are radically defective. Hobbs, as administrator, de boms non, of Edward Dorsey, had no right to demand money collected by Johnsa Dorsey, as administrator in Maryland. When the latter obtained letters of administration, he became responsible under the laws of Maryland to dispose of the chatties and money which might come to his hands as those laws should require.
As Edward Dorsey was domiciled in Kentucky at the time of his death, no doubt the principle of international law, which requires a distribution according" to the laws of the country of the domicil, would be respected by the tribunals of Maryland. The distvibutees of É. Dorsey might have, in Maryland, a right to compel his administrator there to distribute the money collected from Porter, after deducting proper charges according to the law regulating distributions in Ken-. lucky. This right may bo equally enforced here, if the Maryland administrator shall have removed and settled in this state. But we cannot see any reason, and we know of no law which requires the Maryland *283 Hcbnimstrator to pay ovér the money in his bands to the Kentucky administrator for distribution. So. far, therefore, as the complainant’s cause of action depends upon his administration, there is no ground upon which bo support it.
If a decedent is domiciled in this slate at his death, and a person in another state takes out letters of administration there, on so - much of the decedent’s estate as lies within that state, and afterwards such administrator, removes and settles in this state; the distributees may institute suit against him here and compel him to make distribution of the decedent’s effects, in his hands according to the laws regulating distributions in this state.
*283 As a distributee, his right to recover is alike groundless, for it appears from his own bill, that he has in the payment of $1,293 12 cents to him, received much more than he was entitled to. What disposition has been made of this sum does not appear. He cannot recover therefore, unless it be because, in the answer of his co-distributees to the supplemental bill, they pray the court to decree what they are entitled to from Johnsa Dorsey’s representatives, to the complainant, who in the supplement prays for a decree in favor of the distributees of E. Dorsey, generally. We doubt whether such cross-praying can, in any case, justify a decree in favor of a complainant who had no right on his own account to recover. It would be a case without precedent, to permit a complainant without right, at the commencement of his suit, to recover upon the rights of a defendant not transferred or assigned,but a wish expressed in the answer that the complainant might recover tor the use of the defendant, and thereby to charge the defendant with the costs of the suit.
It may not be improper, to remark that the record does not exhibit any evidence which supports that part of the decree, which gives interest at the rate of six per cent, or any other rate per annum, from the 1st of October, 1813. The trustee, Monies, sold the estate on a credit of twelve months, and took bond with security, bearing interest from the 1st of October, 1813; and it is true that the chancellor in Maryland, when directing the payment of the $2,907 18 cents in 1818, required the trustee to pay interest upon it in proportion as he had received interest on the amount of the sales.
Now there is no evidence showing the rate of interest in Maryland. It may not be six per cent.' Whatever it is, according to repeated adjudications, we cannot judicially know it. Nor is there a particle of proof showing that Moales, the trustee, collected any interest from those who purchased property at his sales. Nor can we presume that the purchasers suffered their *284 bonds to run on interest after maturity. Some may have paid as soon as their bonds became due. If so, the money may have remained idle in Moales’ hands for years, producing no interest. The decree allowing interest from 1st of October, 1813, is altogether erroneous under the present state of facts.
Where two persons administer upon the estate of a decedent, the one suoing out letters of administration in this state, and the other taking out letters of administration in another state; the administrator here canr.ot compel this administrator of another state,- to pay-over money to him for distribution.
CritUnden and Semple for plaintiffs; Denny, for defendants-
The question made in regard to the application of the statute of limitations need not be decided. Other questions are likewise presented which may never occur again. - Wc shall not anticipate difficulties.
The decree of the circuit court is reversed, and the cause remanded with directions to give the complainant leave to amend his bill, so that he may show a purchase or transfer from his co-distributees of their interest to him, if such be the fact, or that he may show the disposition which he has made of the $1,293 12" cents, and thereby entitle himself to a portion of the remainder of the $2,907 18 cents, if he can. Leave should also be granted the defendants who are co-distributees with the complainant to amend their answer, so as to claim directly to themselves their distributable shares, or to acknowledge the transfer to the complainant, if it shall be charged. The circuit court may permit such other steps to be taken as arc proper to reach the merits of the case.