CHANCERY.    **Findley and wife, &c. *vs* Patterson's Executor and Devisees.**

Case 36.    ERROR TO THE ADAIR CIRCUIT.

*Parent and child.   Trusts and trustees.   Limitation.
Estoppel.   Adverse possession.   Release.*

October 13.    CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

The case stated.    IN the year 1838, James W. Findley and Mary his wife, (a daughter of *John Patterson*) and *Noah Wilcox* and *George W. Wilcox*, infant children of *Nancy Hughes Patterson*, who was also a daughter of the said John, filed a bill in chancery against his representatives, for sundry slaves claimed under a deed of gift made in 1810, to the said *Mary* and *Nancy*, then infants, by their grandfather, *Blackmore Hughes*, of a female slave named *Sarah*, who, as well as the said donees, remained for many years in the family and under the control of the said John, and whose children, as well as herself (*the said Sarah*) are sought to be recovered from his representatives, who deny the validity of the said gift, and rely also on the lapse of time and long continued possession by the said John, who died in the year 1838.

The Circuit Court dismissed the bill absolutely, and that decree is now to be revised.

*A father who assents to a conveyance of slaves to his children by their grandfather and holds them as father of the children, is a trustee for the children, and by such assent waives any prior claim.*

We are satisfied that Blackmore Hughes' deed, in 1810, vested in his two infant grandchildren an indisputable title to the slave *Sarah*, who had been sent by their donor to their mother, shortly after her intermarriage with their father, in the year 1805; for even if their father might have been able to hold the slave as his own, under a presumed gift to his wife, nevertheless, it is evident that he renounced such a claim and was privy to the subsequent gift to his two infant children after their mother's death; and, therefore, his representatives are estoped to deny that the title had passed to those children.

*The possession of a father, of slaves deeded to his children, is a*

Nor do we doubt that the said *John's* subsequent possession of the said slave was, in the first instance at least, in the character of father and natural guardian of the true

owners, and that this implied trust gave jurisdiction in this case to a Court of equity concurrently with a Court of law.

But still we must concur with the Circuit Judge in the absolute dismission of the bill as to all the complaining parties.

As to Findley and wife, the dismission seems to have been proper for two reasons—first, whilst sole, and after she was 21 years old, that is in the year 1831, she released to her father all her claim to the said slaves—and though such a contract between parties standing in such a relation should be subjected to a peculiarly severe and jealous scrutiny, yet there is no extrinsic proof of fraud, mistake, or improper influence in the execution of the release; and we do not feel authorized to presume that it was not a fair and binding compromise of conflicting claims considered questionable: Secondly, There can be no doubt that, from the date of the release, the implied trust ceased, and *John Patterson's* possession was, as to the said *Mary*, adverse in fact, and so understood by her; and consequently, as she then labored under no saving disability, and more than five years elapsed before the institution of this suit, she must be barred in a court of equity, as she would certainly have been barred had she elected to bring an action at law.

And as to the infant complainants, who sue as the children of the other donee of her grandfather, it seems to us that the absolute dismission of the bill cannot be deemed erroneous.

If their grandfather, Patterson, did not hold the slaves adversely to the right of their mother, at the time of her marriage, her title passed by operation of law, absolutely to her husband; and on this hypothesis, the right to sue was in the father alone, and the children could not maintain a suit in their own right, he being still alive. And we are strongly inclined to the conclusion that Patterson should not, from the facts now exhibited, be deemed to have been, in fact or in law, possessed of the slaves otherwise than as father and trustee of his two infant children, until long after the marriage of Mrs. Wilcox; an ouster in such a case should not be readily presumed, and

FINDLEY & WIFE &c.
*vs*
PATTERSON'S EXECUTOR & DEVISEES.

trust which gives a court of chancery jurisdiction to determine the right thereto concurrently with a court of law.

Though the chancellor will subject to jealous scrutiny a contract between parent and child, in relation to property held by the father as the natural guardian of the child, yet, where there is no extrinsic proof of fraud, mistake or improper influence, he will not interpose to set aside the contract. But when the father held property (slaves) as the natural guardian of his child, and after the child attain full age, release the claim the father thenceforth will be considered as holding adversely, & 5 years will bar either an action at law or by analogy, a suit in chancery.

The title to slaves in the possession of the father, as the natural guardian and trustee of his daughter, on her marriage vests absolutely in the husband, and on the death of the wife husband alone can sue.

FINDLEY & WIFE &c. vs PATTERSON'S EXECUTOR AND DEVISEES.

there is no evidence of such infidelity as early as her marriage.

But even if *Patterson's* possession could be deemed adverse to the right of *Mrs. Wilcox,* at the time of her marriage, still we would be of the opinion that her children could not maintain this suit; that she herself would have been barred had she yet survived, and that it was not erroneous to dismiss the bill absolutely, as it would certainly have been had there been no other objection to maintaining it than the fact that the personal representatives of *Mrs. Wilcox* ought to have been a party.

Suit for slaves, held adversely to the wife, on her marriage in infancy, must be brought within 5 years after her arrival of full age, and if she died before the expiration of that time, the infancy of her children cannot be lapped on her coverture to save the remedy.

Assuming that the wife's title had never vested in her husband, the suit for enforcing it ought to have been brought within five years after she became 21 years of age, because *Patterson's* possession being, as it must have been to authorize the assumption of such a continued right in her, adverse to her claim, a cause of suit had accrued to her before her marriage, and the disability of coverture could not be lapped to that of infancy, so as to prolong, beyond the period of her minority, the statutory saving against the legal effect of lapse of time: *Floyd's heirs* vs *Johnson et al.* 2 *Litt. Rep.* 114. And consequently, as she had attained majority more than five years before the commencement of this suit, it could not have been maintained even by her personal representa-

The possession of a trustee, after a renunciation of a trust, is adverse from the time of such renunciation; and the chancellor, when the jurisdiction is concurrent, will apply the bar as a court of law would do.

tive, nor by her husband and herself had she still survived; for after a renunciation of a trust and a hostile holding in fact by a trustee, and especially in a case of implied trust, time may operate as effectually as if there had been no trust; and consequently, as a court of law and a court of equity had concurrent jurisdiction, the bill in chancery should be barred by the same facts which would have operated as a bar to an action at law for the same slaves.

We are, therefore, of the opinion that the right sought by the infants in this case is lost by lapse of time.

Consequently, we feel constrained to affirm the decree dismissing the bill absolutely.

*Monroe and Owsley* for plaintiffs ; *Harlan* for defendants.