Martin, &c., vs. Letty, &c., of color.                    Case 18.

APPEAL FROM GREEN CIRCUIT.                                  Pet. Eq.

1. In a suit to recover negroes emancipated by will of a third person, the administrator of such person is a necessary party.
2. The disability of coverture cannot be added to that of infancy to prevent the running of the statute of limitation. (*Finley & Wife vs. Patterson's Exrs. 2 B. Monroe,* 78.)

Chief Justice WHEAT did not sit in this case.

This suit was brought in January, 1853, by Charles     CASE STATED.
Martin and Lucinda, his wife, and Chas. B. Gum and
Sarah Jane, his wife, to recover a negro woman Letty,
and her children and grand children, some sixteen in
number, that had been set free by Andrew Barnett,
by his last will and testament, against the adminis-
trator with the will annexed, and the negroes were
made defendants also, in which the plaintiffs claim
the negroes and their hire.

The plaintiffs alledged that they are the only chil-
dren of James and Cassandra Caldwell, who are both
dead; their father died when they were very young,
and their mother about two years before the institu-
tion of the suit; each intestate. That the female
plaintiffs were the nieces of Mrs. Barnett, and resided
in the family of Andrew Barnett, and both married
before they arrived to the age of twenty-one years.
That the negro woman Letty was originally the prop-
erty of James Caldwell, their father, and that by an
arrangement between their grand father William,
and James Caldwell, and his father and Andrew Bar-
nett, the slave Letty and her daughter Paulina, were
to be taken to Barnett's house, to be kept during the
raising of Sarah Jane, then about two years old,
" with the express agreement that Barnett was to
' hold and take care of said slaves, and their increase,
' for the benefit of said plaintiffs, Lucinda and Sarah
' Jane, until they should come of age or marry."

MARTIN, &c.
*vs.*
LETTY, &c.

That during all the time Barnett held said slaves in possession, he acknowledged the right of said plaintiffs. That the administrator of Barnett does not set up any claim to said negroes, but permits them to go at large as free persons. Plaintiffs claim Letty and Paulina, and their increase, as their slaves, and claim the immediate custody of them, and ask that a judgment to that effect may be rendered.

Process was served on all the defendants, and gurdians *ad litem* appointed for such as were infants; answers were filed by the administrator and adult negroes, denying all the material allegations of the the plaintiffs' original and amended petitions. On final hearing the Circuit Court dismissed the petition, and the plaintiffs have appealed to this court.

*B. & J. Monroe*, for appellants—

1. The proof in this case shows very satisfactorily that William Caldwell, the father of James Caldwell, who was the father of the plaintiffs, Mrs. Martin and Mrs. Gum, about the year 1819, purchased the woman Letty and her child Berkley, at Sheriff's sale; and afterwards purchased the girl Paulina, of Stockton, who had her in possession. A bill of sale was made by Stockton to Barnett and William Caldwell, the father of James Caldwell, and a bill of sale for Letty and her child Berkley to Barnett alone. The facts and circumstances show that these purchases of slaves were made for the benefit of Mrs. Gum and Mrs. Martin. It is admitted that about 1821, Wm. Caldwell, for a consideration less than half that paid for Paulina, gave Barnett a bill of sale for his interest in Paulina. It is alledged in the petition that Barnett, either before the purchase of the negroes or shortly afterwards, received the full amount which he paid for the negroes, and there is evidence conducing to show that fact. And that he held the negroes in trust for Mrs. Martin and Mrs. Gum, as he repeatedly admitted.

2. The proof is satisfactory, by the repeated confessions of Barnett, that he held the negroes in trust for the use of Mrs. Martin and Mrs. Gum, who were to have the possession of them on arriving at twenty-one years old, or marriage. These acknowledgments were made at different times; proved by different witnesses, and on one occasion made under peculiarly solemn circumstances, when he was very ill and thought he might die, and made to Mrs. Barnett, his wife.

3. The fact that Mrs. Gum and Mrs. Martin both lived at Barnett's until they were married, and that when they were married they were both under twenty-one years old, is clearly proved, and goes to account for delay in bringing suit. They were taught to regard Barnett and wife as standing in *loco parentes*, and still hoping, doubtless, if they knew their rights they would be accorded to them, but if they were ignorant of them, as they say they were, it was the result of fraud in Barnett in concealing them from them; and an additional reason why they were ignorant, their mother became a lunatic, and of course thought nothing of property. Has lapse of time barred the action? The court is referred to 3 *Litt.* 183; 4 *Dana*, 226; 5 *Ib.* 199; 1 *Marshall*, 67; 3 *J. J. Marshall*, 515; 4 *Ib.* 592; 6 *Dana*, 331.

3. The administrator of Barnett was properly sued. (*Clemens vs. Caldwell*, 7 *B. Monroe*, 174.)

4. The statute of limitations cannot avail a trustee. (1 *Marshall*, 39; 2 *Ib.* 384; 3 *Litt.* 181; 1 *J. J. Marshall*, 401; *Ib.* 370; 7 *Dana*, 166; 2 *Marsh.* 245; 2 *Litt.* 181; 3 *Marshall*, 447.) There is no proof to show that Barnett ever denied the existence of the trust. By his will he emancipated all his slaves in 1847, not five years before this suit was instituted, and the slaves in contest claim freedom under that will, which they are not entitled to if they were not Barnett's property.

Martin, &c.
vs.
Letty, &c.

*T. N. Lindsey*, on the same side—

Lapse of time is chiefly relied on in the defence to this suit, and upon that ground it is said the Circuit Judge dismissed the appellant's petition. The statute of limitations does not run in behalf of trustees against *cestui que trust*, (*Turner vs. Debell*, 2 *Mar.* 384,) neither at law or in equity. (3 *Litt.* 181; 1 *J. J. Marshall*, 401; *Ib.* 370.)

The trust was never so renounced by Barnett as to give effect to lapse of time, or the operation of the statute of limitations against the plaintiffs, the *cestui que trusts*. (*Bohannon vs. Sthreshley*, 2 *B. Monroe*, 438; *Kendrick vs. Robinson*, 2 *Dana*, 166.) It is true appellees state that more than five years had elapsed since the marriage of the plaintiffs, but the statute is not relied on.

There was no open renunciation of the trust by Barnett, such as to put the plaintiffs on the alert. Barnett did not name the slaves in his will, but he emancipated his slaves by a general clause, and for aught that appears, did not intend to embrace the slaves in contest.

*Barnett & Barbee*, for appellees—

The appellees insist on the following propositions, and insist that the decision of the Circuit Court is correct:

1. The plaintiffs show no cause of action against the administrator of Barnett, having released all claim for damages; and no right of action against the negroes; if they are their slaves, thay cannot sue them; by suing them they recognize them as free persons, liable to be sued.

2. The proof in the cause does not show any trust. If there was a trust it arose when the negroes were purchased in 1819. It is not pretended that any trust was afterwards created. The bills of sale contradict the idea that there was any trust arising at that time, and they cannot be contradicted by parol proof, unless fraud or mistake in their obtention is shown,

which is not done. Proof, by parol, of a trust, should be clear and satisfactory. The source from which it is pretended the money came from to reimburse Barnett, was insufficient for that purpose, according to the plaintiffs'·proof.

3. The proof shows an adverse holding by Barnett since 1839, without any doubt, for the proof shows that the parties become hostile in consequence of Martin setting up claim to the negroes, and refused to let them go to Gum's, as Mrs. Gum was asserting claim to them. All these assertions of title were in presence of Mrs. Barnett, the wife of Andrew Barnett, and aunt of the female plaintiffs. And they were evidently then apprised of Barnett's adverse holding.

The right of action, if any ever existed, accrued to the husbands of these female plaintiffs in 1836. (*Turner vs. Davis,* 1 *B. Monroe,* 152; *Thomas vs. Kennedy,* 4 *Ib.* 36; 5 *Ib.* 556; 7 *Ib.* 596; 9 *Ib.* 95; 12 *Ib.* 42.) And the suit was not brought in five years. (2 *B. Mon.* 438.)

The disability of infancy and coverture cannot be united to protect the right. (2 *B. Monroe,* 78.)

4. The chancellor does not regard with favor, and is slow to enforce stale claims which depend upon oral testimony to sustain them. (*Smith vs. Parham, MSS. opinion, Winter Term,* 1856.)

We ask an affirmance.

*James Harlan,* on the same side—

I shall insist that the judgment is right, and should be affirmed by this court.

1. Shortly after the commencement of the action the plaintiffs released the administrator from all responsibility whatever, for any claim or demand they may have against the estate of Andrew Barnett.

After the execution of that paper the administrator ceased to be a party to the action, and it stood on the docket as a case in which the plaintiffs were suing their own slaves to recover possession of them by the judgment of the court. I submit, for the con-

sideration of this court, whether such an action is maintainable? Can a case be found any where in which the owner or master of a slave maintained an action against his own, or one whom he claims to be his slave?

A colored person, claiming to be free, may maintain an action against any person who attempts to deprive him of his rights; but that is a different thing from suing a person alleged to be a slave. If my slave refuses to perform service I take possession of him and compel him to labor. If he assumes to be free that does not compel me to appeal to the courts for redress. In the original petition the plaintiffs say the administrator prefers no claim to said negroes, that shortly after he was appointed administrator he permitted said negroes to go at large as free persons of color. There was therefore no necessity of making the administrator a party, as no judgment was asked against him.

2. The evidence shows that Andrew Barnett was vested with a complete legal title to Letty and Paulina, and had them in possession from the year 1819 to the time of his death in 1847, during all of which time he exercised the usual acts of ownership over them, by listing them for taxation, &c.

The title of Barnett being shown to be clear, the next question is, whether the plaintiffs below showed any fact to destroy the apparent good title of Barnett.

3. The claim of the plaintiff is based upon an alleged trust in Barnett to hold said slaves for the use and benefit of the Miss Caldwells when they married or become of age. It is not pretended that the trust was ever reduced to writing. The plaintiffs attempt to establish it by proving conversations or admissions by Andrew Barnett made twenty-five or thirty years before the time the evidence was given. Such evidence comes within the rule that confessions and admissions are the weakest and most unsatisfactory evidence known to the law; this case shows the wis-

dom of the rule. I think the character of such evidence it entitled to very little weight in this case.

4. But if it were, the statute of limitations is an insuperable bar to any relief. One of the female plaintiffs was married in January 1836, and the other in August 1836. Upon their respective marriages all of the interest which they had in the negroes vested absolutely in their respective husbands. This court do not need any references to authority on this point. The Kentucky Reports are filled with them for the last thirty or forty years.

The fact that the female plaintiffs were married women makes no difference, because the right of action, the *title* itself, was vested in their husbands and it is not pretended *they* labored under any disability.

Ignorance of their rights did not prevent the statute from running. The statute contains no saving in favor of *ignorance*.

If this were an action for the recovery of real estate twenty years adverse possession would bar an action in the name of husband and wife for the reasons given by the court in *Robertson vs. Neal*, 2 *Dana*, 86.

In this case, no action was brought until seventeen years after the alleged right accrued. The marriages were in 1836, and the action was brought in 1853. All of the parties lived during the whole time in the county of Green.

5. Upon the whole case, looking to the staleness of the claim, the character of the evidence taken to support it, and the positive bar interposed by the statute of limitations, this court will not reverse the judgment of the circuit court dismissing the petition of the plaintiffs.

Judge SIMPSON delivered the opinion of the court.

The action in this case was properly brought against Barnett's administrator, for the slaves claimed by the plaintiffs in their petition; and as the persons sued for by them set up a claim to freedom un-

MARTIN, &c.
vs.
LETTY, &c.

ministrator of
such person is a
necessary party.

der Barnett's will, they were necessary parties, as this court has frequently held in analogous cases. The prayer that they might be subjected to servitude, &c., was unnecessary, for if, as asserted by the plaintiffs, they were slaves, they were still, in contemplation of law, in a state of servitude; but as this prayer was mere surplusage, it did not affect the merits of the controversy. Nor were they affected by the release which was executed to Barnett's administrator which was only intended as a release of the estate of his intestate, from all claim for damages for the service or the value of the slaves on account of their detention, with an express provision, however, that nothing therein contained was to be so construed as to deprive the plaintiffs of the right to take all legal and proper steps to recover the slaves. The effect of this release was, that if the plaintiffs recovered the slaves Barnett's estate was not to be responsible for hires, nor damages of any kind resulting from their illegal detention.

But although the action was properly brought we are of opinion the plaintiffs were not entitled to any relief. Barnett acquired the possession of the slaves in 1819, and held them in his possession until he died in 1847. This action was not commenced until 1853, upwards of thirty years after the transactions occurred, which the plaintiffs have attempted to explain by parol testimony. The only writings exhibited show an indisputable title to the slaves in Barnett, and parol evidence has been resorted to for the purpose of establishing a secret trust, inconsistent with the face of the writings. The wisdom of the rule which has been adopted by courts of chancery, to refuse to investigate stale and ancient transactions, especially where the memory of witnesses has to be relied on for the purpose, was never more forcibly illustrated than it is in this case. Here the witnesses undertake to detail conversations that occurred thirty years before they were called upon to depose, about matters in which they had no interest, and

consequently where there was nothing to produce a lasting impression on their memories. The universal experience of mankind teaches us, that such testimony cannot be relied upon. The witnesses may be perfectly honest, and believe what they swear to, but the human memory is so constituted that after the lapse of thirty or even twenty years it cannot call up with any degree of certainty even the substance of a casual conversation, and the witnesses hearing it repeated from time to time, that certain things were said, come to the conclusion that they heard and have a distinct recollection of them. Such testimony must, from its very nature, be very unsatisfactory, and in this case is rendered peculiarly so by the circumstance that it is relied upon exclusively, and is not sustained by the proof of a solitary fact, or any written testimony whatever.

It cannot be even plausibly contended that the plaintiffs were ignorant of their rights, and therefore could not bring their action any sooner. According to their own testimony, the admission of their right many years since, was made openly in the family, in the presence of strangers, and must have been known to the two beneficiaries. But the proof is full and satisfactory that as early as 1839 the right to the slaves was a matter of controversy between the parties, and it was then well known to the plaintiffs that their right was denied by Barnett, and that he claimed the slaves as his own.

Besides the claim is not only stale, but it is barred by the statute of limitations. The cause of action accrued when Sarah Jane and Lucinda Caldwell were infants. Barnett then held the slaves as his own, and denied their right to them, even if he had previously acknowledged it. The statute, however, did not run against them whilst they were infants, but commenced running as soon as their infancy ceased, notwithstanding their coverture. The disability of coverture could not be lapped to that of infancy so as to prolong the statutory saving against

MARTIN, &c.
vs.
LETTY, &c.

2. The disability of coverture cannot be added to that of infancy to prevent the running of the statute of limitation. *Finley & Wife vs. Patterson's Exs.* 2 B. Mon. 78.

the legal effect of the lapse of time. (*Findley and wife vs. Patterson's exors.* 2 B. Mon. 78.) As more than five years elapsed after their infancy ceased, before the death of Barnett, the statutory bar had operated in his lifetime. The husbands were evidently barred, as they had a right of action as soon as they were married, inasmuch as Barnett refused to give them the possession of the slaves.

But we place the case upon the broad ground that the cause of action is stale, and the plaintiffs have neglected their rights too long, if they ever had any, to be entitled to the interposition of a court of equity. The proper time to have brought their action would have been immediately after the marriage of the claimants, who then became entitled to the possession of the slaves if they belonged to them, and had a right to and should have demanded them. The justice of the case might have been reached in a suit at that time, but as thirteen or fourteen years more were permitted to elapse before the action was brought, and Barnett had died in the meantime, any redress that the plaintiffs may have been entitled to has been lost by unreasonable delay and inexcusable negligence.

Wherefore, the judgment is affirmed.