CASE 87.—ACTION BY JENNIE MOSS KENNINGHAM AGAINST
THE EXECUTOR OF HER FATHER JAMES L. KEN-
NINGHAM, DECEASED, TO RECOVER A LEGACY
—January 16, 1903.

# Kenningham v. Kenningham's Ex.

Appeal from Whitley Circuit Court.

From the judgment the executor appeals.—Re-
versed.

1. Wills—Duty of Personal Representative.—K. and his wife
had been divorced by a decree of the Fayette circuit court,
in which the custody of their child, a little girl about six
years old, was given to her mother. The judgment reserved
the right to make further orders concerning her future custody.
When the girl was about fifteen years old her father died,
resident in the District of Columbia, leaving about $1,300 in
money which he disposed of by his will in trust to F., for his
daughter, if she was living and could be found, directing said
F., as his executor, to use all reasonable means and expense to
find his daughter and make known to her his character and
history, and to use the money given in trust in his discre-
tion for his daughter's benefit, towards educating and train-
ing her, allowing her such sums of money for clothing and
sustenance as he deemed proper, and requested that he take
control of her and train her as he would his own daughter.
The will further provided that if the daughter should fail
or refuse to obey the will of her father, then the executor
should pay the bequest to the son of the executor. Shortly
after the probate of the will, the executor learned that the
testator's daughter was living with her mother and step-
father near White Hall, Madison county, and wrote her a
letter, informing her of the bequest of her father, and re-
questing her to come and live with him. The daughter in
response, wrote a letter, stating that she was happy, and
well cared for, and declining to leave her mother, but ex-
pressed a desire to conform to the wishes of her father.
The executor wrote another letter expressing his willingness

to take charge of her and apply the funds as directed by the will. No further response from the daughter was received, and the executor paid the fund over to his son, thus construing the acts of the daughter as a disobedience of the will of her father. The daughter brought this suit to recover the legacy. Held, that the executor did not exercise reasonable diligence in complying with the wishes of the testator before paying the money over to his son. It was his duty to see her personally, and fully explain the terms of the will to her and her mother. He had no right to demand custody of the girl while she was in the custody of the mother under decree of court. The court could have reinstated the case on the docket, and would have made proper orders for the custody, education and maintenance of the child. She is entitled to recover the legacy.

2. Jurisdiction.—Although testator died resident in the District of Columbia, and his executor qualified there, the legatee had the right to sue the executor, who has removed to this State, to recover her legacy.

JOHN H. WILSON and HAZELRIGG & CHENAULT for appellant.

T. L. EDELEN for appellee.

OPINION OF THE COURT BY JUDGE BURNAM—Reversing.

This action was instituted by the appellant, Jennie Moss Kenningham, against the appellee, H. F. Finley, as executor of her father, James L. Kenningham, to recover a legacy devised to her by her father's will. The father of appellant died domiciled in the District of Columbia, and his will was probated in the proper court of the district, and appellee duly qualified as executor thereof and took possession of the devised estate. After making a number of small bequests to relatives the will contains the following provisions:

"5. I will and bequeath all the money I have on hand, or on deposit in the National Bank of the Re-

public in this city (after the payment of all my just
debts and funeral expenses) to H. E. Finley in trust
for my daughter, Jennie Moss Kenningham, if living,
and can be found.

"6. I will that my executor hereinafter named,
use all reasonable means and expense to find my said
daughter and make known to her my history and
character, as he shall believe me to have lived. And
he will, in his discretion, use the money hereby given
him in trust, for my said daughter's benefit towards
educating and training her, as in his judgment shall
be best for her interest, allowing such sums of money
to her for clothing and sustenance, from time to time,
as in his judgment shall appear to be proper and con-
sistent with her age, wants and means in his hands,
putting such money at interest as best he can for her
interest, as shall not be immediately wanted for the
uses above indicated, and if, when my said daughter
shall arrive at the age of twenty-one years, there
shall be any balance in the hands of my executor, he
shall pay the same with any accrued interest in his
hands to my daughter.

"7. If my said daughter shall not be living, or
if living shall die before she attains the age of twenty-
one years without issue of her body living and born
in lawful wedlock, then in that event my will is: That
all the bequest made in trust for her benefit shall be
paid by executor to my cousin, F. W. Finley, to whom
I hereby give and bequeath it.

"9. I will that my executor take control of and
raise and train my said daughter as he would his own
daughter in so far as the money given him for that
purpose will allow, and that she will submit to him in
all respects as she would to me, my purpose being for
her alone to receive the benefit of her bequest herein-

before made, but shall my said daughter fail or refuse to obey my will in this request, then it is my will that my executor pay this bequest to my friend and relative, F. W. Finley.

"10. I hereby appoint and request my friend, H. F. Finley, to carry out in its true spirit this my last will and testament."

After setting out the facts above recited, the plaintiff alleged that James L. Kenningham had on deposit to his credit in the National Bank of the Republic at the time of his death $1,735.75, which was taken possession of by the defendant as executor. And in the second paragraph of her amended petition she alleges that she was born on the 25th day of June, 1875, and that on the 20th day of May 1881, her mother was divorced from her father by a judgment of the Fayette Circuit Court; that she was then only six years old and was placed in the custody of her mother. The judgment, however, reserved the right to make any orders in regard to her future custody as the court might think proper; and that by virtue of this judgment she lived with her mother and under her control until the death of her father without any communication of any kind with him; that when her father made his will, he did not know of her whereabouts or whether she was living or dead; that shortly after his death the defendant addressed a letter to her at White Hall, Madison county, Ky., where she was then residing with her mother and her stepfather, the letter being dated March 13, 1890, in which he informed her of her father's death, and the provisions of his will with reference to her, and invited her to become a member of his family, in accordance with her father's wishes, promising to discharge in good faith the duties imposed by his trust. That this let-

ter was received through the mail and was taken possession of by her mother, who wrote and mailed to the defendant in plaintiff's name the following letter:

"White Hall, Madison Co., Ky., March 18, 1890. Hon. H. F. Finley.

.Dear Sir:—Yours of the 13th to hand and contents noted. I thank you very kindly for the interest you and ,our family have manifested to me, and am sorry to be under the painful necessity of declining your offer of acceptance as a ward. You will please pardon me for expressing myself freely to you upon this subject. In the first place understand I do not wish to interfere with or act in any way contrary to my father's last will and testament. But it was my mother who has struggled through adversity to obtain for me all the advantages I have had, and it is to her. I owe all. And it would be contrary to natures law for me to leave her now that I can be a comfort and help in her declining years. Truly if a child has a friend it certainly is her mother, and from my own experience have found it to be the case. My home is plentiful and happy, which necessitates me to decline your kind offer in your home. My uncle Charles F. Smith of Richmond says he met you several times in Williamsburg and would have cheerfully given you all the information concerning my whereabouts had he known of my father's illness or desire to see me before his death, and also my uncle and aunt Mr. and Mrs. Million would have cheerfully given my father my address last fall when he was in Kentucky on a visit. I will not say more on this subject as there is being enough said throughout Kentucky, but it would be a great satisfaction if you would send me a copy of his will."

In response to this communication, the defendant, Finley, addressed her the following letter:

"Washington, D. C., March 21, 1890.

"Miss Jennie M. Kenningham, White Hall, Ky.

"Dear Miss:—Your letter of the 18th inst. to hand. Its tone is the reverse of what I wished it to be, but you are young yet and I shall not despair. You have need of an education now, later on you may not be so "pleasantly and plentifully situated." With good education you can more certainly be able to aid yourself and mother, and it will be óf great satisfaction to you in after life. It can but be the wish of your mother and relatives that you be educated and fitted for position in the best circles of society and usefulness. And even though you may be so situated that you can and will obtain this, without the provisions made for you by your father, I can but hope you will take and use for your accomplishment, the small but sufficient sum left by your father for this purpose. I know you know but little of your father's life. I know you were not forgotten by him in his earnest prayers for your welfare. You, more than all else, he desired to know and love him, and he was worthy of it. He was loved by all who knew him here and all who loved him felt an interest in your welfare. If you will allow me, I will love you as my own daughter and treat you in the same way; and guard and protect you as a father. I would deny you nothing that I would give my own child, and shall feel sadly disappointed if you shall refuse to accept the wish and will of your father as expressed in his will. Now it would be to the interest of my family that you should not do this, for in the event you refuse to allow me to advise and superintend your education and training, the money left in my hands for this purpose goes to my

son. But I want you to have it, and you shall if you will. I can put you in school now with my own daughter; you will be surrounded with fit and pleasant associations; and you will be loved and cared for and in all respects treated as a young lady of your age should. Now I do not wish to respond to the suggestion in your letter in substance that you could have been found and brought to the bedside of your father before he died. The reasons why this was not done are abundant and will be satisfactory to you whenever you will give opportunity to learn them. The relations which existed between your father and mother were not pleasant, but he is dead. I have no doubt he died a Christian. If he erred in life—which all do, let the grave hide his faults and let those who live forgive and forget all wrong, real or imaginary. He loved you and prayed for you, his prayers ought not to be in vain.

"I go home the first of next month and would like to take you with me and put you in school. I hope you will consult your friends and relatives in regard to this matter and trust your own good sense and that of your friends will decide for the best.

"Your friend,
"H. F. FINLEY."

That when she received this letter she was only fifteen years of age, under the control of her mother, and being well treated, provided for by her and her stepfather; that she did not know what to do or how to act in the premises; and that she had no power without the consent of her mother to accept defendant's proffer of protection; that the defendant. Finley, did not come to see her, or take any steps to reinstate the divorce suit upon the docket of the Fay-

ette Circuit Court or to get any order as to her care and custody, so as to enable her to comply with her father's will; that on the 16th day of May, 1890, then four months after he had received the funds he paid over to his son, F. W. Finley, about $1,200.00 of the money devised to her by her father; that in February, 1893, he made a settlement of his accounts as her guardian with the Judge of the Whitley County Court in which he charged himself with $1,220.86 as a balance remaining in his hands as executor of her father. On this pleading the case was submitted and the Circuit Judge decided that she was not entitled to any relief, and struck the case from the docket. From that judgment the plaintiff appeals.

It is the contention of appellees that this judgment should be affirmed for two reasons. First, because he was appointed and qualified as executor, and received the assets in the District of Columbia, the domicile of testator at the time of his death; and that for this reason he can only be required to answer for the faithful discharge of his duties in the tribunals of the District of Columbia. Second, that the averments of plaintiff's petition and the exhibits filed therewith clearly show a performance on his part of all the duties imposed upon him by testator's will, and a refusal on the part of plaintiff to comply with the conditions annexed to the bequest to her by the terms of the will.

Appellee has cited numerous authorities of great weight to support the contention that an executor cannot be sued outside of the jurisdiction of his appointment for a failure to carry out the trust imposed upon him; but in the early case of Dorsey's Ex. v. Dorsey's Admr., 28 Ky. 280, it was held by this court

in an opinion by Judge Underwood that the distribu-
tee of a decedent might enforce distribution in the
courts of this State of assets received by an adminis-
trator appointed in Maryland if found in this State.
This case was followed by that of Atcherson's Heirs
v. Lindsey, 45 Ky. 86, in which the administrator and
infant heirs of John Atcherson sought to recover of
James Lindsey, who administered upon the estate of
decedent in South Carolina certain assets received
by him in that State. And the contention was made in
that case that as Lindsey was appointed administrator
in South Carolina and received the assets sued for
there, he could not be held responsible in the tribu-
nals of this State for the surplus remaining in his
hands at the suit of a local administrator and infant
heirs of decedent. In response to this contention the
court through Judge Marshall, after referring to the
case of Dorsey's Ex. v. Dorsey's Admr., quoted
supra, said:

"Upon the express authority of this case, and
under our own sense of what is required for conven-
ience and justice, and of the comity due to the sov-
erignty and laws of South Carolina, we are of the
opinion that the mere fact that Lindsey was ap-
pointed administrator in that State and received
there the assets for which he is now charged, does
not of itself exempt him from all liability to be sued
in the tribunals of this State for a claim growing out
of his having thus received the assets or the proceeds
to which the complainant or some of them are enti-
tled. Whether any decree should finally be rendered
against him on this account may depend upon the
facts disclosed in his answer and upon the proof, but
we think he was bound to answer."

The question was again before this court in Manion's Admr. v. Titsworth, 57 Ky. 597, and in a well-considered opinion by Judge Simpson it was decided that it was settled doctrine in this State:

"That an administrator or executor, who is appointed or who qualifies in another State, and there receives assets in his hands, may be sued in the tribunals of this State by the persons entitled to such assets, if he shall have removed to and settled in this State."

It follows from these decisions that appellant was entitled to maintain this suit against the appellee to recover the balance found due in his hands after the payment of the debts of the decedent in the courts of this State, if shown entitled thereto.

It is apparent from even a casual reading of the will that two ideas were dominant in the mind of testator. First, he desired the bulk of the property owned by him should, after his death, go to his daughter for her education and maintenance. Second, that she should be thrown under the influence of his friends and relations rather than those of her mother. To this end he directs that his executor should use all reasonable means and expense to find her and to acquaint her with his history and character, and when found should take control of, raise and train her as his own daughter. The question then to be determined is whether appellee carried out in good faith the spirit and intention of testator's will with reference to his daughter, and whether she with a full understanding of her rights refused to accept the provisions made for her with the annexed conditions. It is essential to a correct decision of this question that we should look at the surroundings of the parties. Appellant at that time was only fifteen years

old, she had never known her father, her life had been spent exclusively in the society and companionship of her mother and her friends, and on whom the burden and care of her support had up to that time been thrown. Her age, surroundings and opportunities in life, rendered it wholly improbable that she should realize the importance of the proposition communicated to her by letter by an utter stranger who in this formal way, invited her to leave her mother and friends for the society and companionship of persons with whom she had no acquaintance, and of whom in all probability she had never heard. Besides she could not have left the custody of her mother without her consent, even if she had desired to do so without violating the judgment of the Fayette Circuit Court which at that time was in full force and effect. In qualifying as executor of his deceased friend appellant assumed to discharge delicate and solemn duties to his orphan and neglected child. Under these circumstances the two formal letters of appellant to her did not measure up to the full requirement of the duties assumed by him. The spirit of the will required that he should seek her out, make her personal acquaintance, detail to her the history, life and character of her deceased father; and to have impressed her with his sincerity and friendship for her, and the advantages which would have accrued to her from a loyal compliance with the wishes of her father. And when his attention was called to the conditions of the judgment of divorce placing her in the custody of her mother, it was his duty to have gone before the judge of the court and asked his intervention, and that he be awarded the custody and clothed with the power to direct the education of this young girl. It

seems that there can be no room to doubt that if these steps had been taken that some plan would have been devised under the judgment of the court to carry out the wishes of the testator and to have secured to appellant the provisions made for her in her father's will.    At least he should have given her, as suggested in his letter, some reasonable opportunity to change her mind, instead of hastening to pay over the money to his own son.   The trial court erred in sustaining the demurrer to appellant's amended petition, and the judgment dismissing her petition is reversed and cause remanded for proceedings consistent with this opinion.