James L. Montgomery, Appellant, *v.* Robert Nathaniel Boyd, Defendant, Impleaded with Edward R. McDermott and Others, Respondents.

*Dismissal on the opening — action by a creditor to reach a fund conveyed by one since deceased in fraud of creditors — when a court of equity will assume jurisdiction of a fund in the State of New York as against foreign executors — such foreign executors are proper parties — effect of an appearance by one of them — right to a jury trial.*

The practice of dismissing a complaint upon the opening of the plaintiff's counsel, while legitimate, should not be encouraged.

From the pleadings in an action and the opening of the plaintiff's counsel upon the trial, it appeared that the plaintiff was a creditor of James McHenry, a resident of London, England; that in 1871 McHenry and Thomas William Kennard, each of whom owned a large amount of real and personal property in the States of New York, New Jersey, Pennsylvania and Ohio, conveyed such property to trustees by a deed which recited that the trust property should be represented by 400 certificates of $5,000 each which were to be regarded as personal property; that 150 of such certificates were issued to McHenry; that in 1874 McHenry, being then insolvent, transferred 100 of the certificates to Benjamin Moran of London, and that in 1878, at McHenry's request, Moran assigned the certificates to Leonard J. Woodman, also of London, and that the latter died in 1895; that the original trustees were both dead, but that their successors in the trust had in their possession in the State of New York personal property applicable to the McHenry shares, amounting to at least $50,000.

The complaint alleged that the assignment of the certificates to Moran and to Woodman was in trust for the benefit of McHenry's wife and children with a power of appointment to the wife; that a few days before the death of

McHenry's wife, which occurred in 1883, she executed an instrument exercising the power of appointment; that McHenry died insolvent in May, 1891, leaving a last will and testament in which the defendants McDermott and Boyd were nominated as executors; that such executors entered upon the execution of their duties in England, but never took out ancillary letters in the State of New York, although they were requested by the plaintiff to do so; that in 1893 McHenry's executors entered into an agreement in which Mrs. McHenry's appointees joined, for the sale of the certificates to the defendant Henry Bischoffsheim; that the Court of Chancery in England approved the sale.

The action was brought for the benefit of all the creditors of McHenry to reach the property in the hands of the trustees and have it applied *pro rata* to the payment of such creditors on the ground that the transfer of the trust property originally made by McHenry for the benefit of his wife and her appointees was fraudulent and void, and that all the subsequent transfers of the property were affected by such fraud and that the defendants were making an effort to remove the trust property from the jurisdiction of and without administration in the courts of the State of New York and in disregard of the rights of the creditors residing in this State.

*Held,* that it was improper for the court to dismiss the complaint upon the pleadings and the opening of the plaintiff's counsel;

That, inasmuch as the trust estate in the hands of the trustees consisted, in part at least, of personal property, the plaintiff was entitled, under section 7 of the Personal Property Law (Laws of 1897, chap. 417), to maintain the action to set aside the fraudulent transfers;

That, under the peculiar circumstances of the case, a court of equity would assume jurisdiction of the trust fund in the State of New York for the benefit of the domestic creditors and would impress upon such fund a lien or trust for their benefit;

That, as it was necessary for the plaintiff to establish the existence of an indebtedness against McHenry, the latter's foreign executors were necessary parties to the action and that a court of equity would under the circumstances entertain the action against them;

That a general appearance by one of McHenry's executors was sufficient, under the provisions of section 1817 of the Code of Civil Procedure, to bind both of them;

That, if McHenry's executors desired a jury trial upon the question of the existence of an indebtedness on the part of McHenry to the plaintiff, the court had power, under section 970 of the Code of Civil Procedure, to order a jury trial of that question.

VAN BRUNT, P. J., and MCLAUGHLIN, J., dissented.

APPEAL by the plaintiff, James L. Montgomery, from a judgment of the Supreme Court in favor of the defendants, Edward R. McDermott and others, entered in the office of the clerk of the county of

New York on the 10th day of April, 1902, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the pleadings and upon the opening of the plaintiff's counsel.

*Stephen H. Olin*, for the appellant.

*Edward C. Perkins*, for the respondents.

PATTERSON, J.:

The complaint in this action was dismissed at the trial on the pleadings and on the opening of the plaintiff's counsel. Those pleadings and the schedules annexed thereto and the opening address of the plaintiff's counsel constitute a record of nearly three hundred pages of printed matter and relate to transactions of a very complicated character, with very extended ramifications. It is true that a great deal of the matter contained in the pleadings may be discarded as surplusage. There is difficulty in separating the useful from the useless, but *utile per inutile non vitiatur.*

The practice of dismissing a complaint on the opening of counsel is legitimate, and the reasons for its allowance are forcibly stated by Mr. Justice FIELD in *Oscanyan* v. *Arms Co.* (103 U. S. 261); but we have had occasion heretofore to say that it is a practice not to be encouraged. (*Garrison* v. *McCullough*, 28 App. Div. 467; *Denenfeld* v. *Baumann*, 40 id. 502.) In the recent case of *Hoffman House* v. *Foote* (172 N. Y. 350) the court says that the practice of disposing of cases upon the mere opening of counsel is generally a very unsafe method of deciding controversies where there is or ever was anything to decide, and that it cannot be resorted to in many cases with justice to the parties unless the counsel, stating the case to the jury, deliberately and intentionally states or admits some fact that, in any view of the case, is fatal to the action. This case presents a striking illustration of the propriety of these remarks. The learned judge at the trial dismissed the complaint on two specific grounds, neither of which is tenable. They are, in substance and effect, that the plaintiff could not maintain his action because he did not allege that the executors of James McHenry had not failed to act with reference to the matters set forth in the complaint as constituting the plaintiff's cause of action,

and, *secondly*, because the plaintiff did allege in the complaint that the executors did in fact act.

The cause of action asserted in the complaint is not one that inhered exclusively in the executors of James McHenry, nor were the acts of such executors, as we shall presently see, of such a character as to extinguish a cause of action which belonged to this plaintiff. A condensed statement of the material facts constituting the plaintiff's cause of action will suffice to show that.

The plaintiff is the assignee of claims or money demands against James McHenry, a non-resident of the State of New York. Mr. McHenry lived in London for twenty years prior to his death, which occurred in May, 1891. He had no assets in the State of New York, the actual legal title to which was vested in him. He left a last will and testament in which the defendants McDermott and Boyd were appointed executors. They have been, and at the time of the commencement of this action were, acting as such executors in England; they have never taken out here ancillary letters under section 2695 of the Code of Civil Procedure, and no such letters have ever been issued in this State, although the foreign executors have been requested by this plaintiff to take them out. In 1871, Mr. McHenry and Thomas William Kennard, each owning a large amount of real and personal property in the States of New York, New Jersey, Pennsylvania and Ohio, created a trust of such property for certain purposes and conveyed all of their property to Samuel L. M. Barlow and Charles Day, by a deed in which it was recited that the trust property was to be represented by 400 certificates of $5,000 each, to be issued by the trustees and which were to be regarded as personal property. Certificates were prepared and issued, and Mr. McHenry was entitled to and did receive from the trustees 150 of them. On the 26th of May, 1874, Mr. McHenry, being then indebted to the plaintiff's assignors and financially embarrassed and insolvent, transferred 100 of the certificates to Benjamin Moran of London, who in 1878, at his request, assigned them to Leonard J. Woodman of London, who died in 1895. It appears, inferentially at least, that the 100 shares were registered in the books of the trustees in the names of Moran and Woodman in succession and that they stood so registered in 1895, at the time of Woodman's death. The registered owner of the shares was a bene-

ficiary of the trust. Barlow and Day, the original trustees, are both dead, and the defendants Edward C. Perkins and Thomas P. Fowler are their successors in the trust and have in their possession personal property the subject of the trust and applicable to what were the McHenry shares to the amount at least of $50,000.

It is alleged in the complaint, in substance, that the assignment by McHenry to Moran was to the latter as trustee under and pursuant to a deed of trust made in consideration of love and affection by way of post-nuptial settlement, and by the assignment Moran held the certificates in trust for McHenry's wife and children with power of appointment to the wife, and in the event of there being no children and no appointment the shares were to revert to James McHenry, and that Woodman merely took the place of Moran in the trust. It is further alleged that Mrs. McHenry died in the year 1883, leaving no children her surviving, and that a few days before her death she executed an instrument appointing the shares to the son-in-law of James McHenry and to Edward McDermott, the father of the defendant Edward R. McDermott; that the settlement and appointment were without consideration and were intended to defraud the creditors of McHenry, who was then insolvent, and are voidable as to them; that after Mrs. McHenry's death, Mr. McHenry assumed to be the proprietor of the shares and they were treated by his executors as part of his estate. In May, 1893, McHenry's executors entered into an agreement in writing in which Mr. McHenry's son-in-law and Edward McDermott joined for the sale of the certificates and property to the defendant Henry Bischoffsheim. By the agreement of sale, Mr. Bischoffsheim was to pay certain debts of Mr. McHenry and certain sums in cash to his executors and also a contingent part of the proceeds of the certificates. The executors retained the right to the sum of £4,000 in the hands of Perkins and Fowler, trustees, being a portion of $50,000 which they hold in their hands applicable to the 100 certificates as the proceeds of sale of trust property which had been appropriated and set aside as dividends payable on such 100 certificates. Mr. McHenry's executors applied to the Court of Chancery in England for its approval of the sale, which was given. The plaintiff avers that upon the death of James McHenry, the assets and property in the hands of Perkins and Fowler, trustees, and rep-

resented by the said 100 certificates, being property and assets within this jurisdiction belonging to the deceased debtor, became, upon his death, a trust fund charged by operation of law with a lien in favor of the creditors of the deceased debtor and that it became the duty of Robert Boyd and Edward McDermott to cause the assets to be administered in accordance with the Code of Civil Procedure.

Upon these allegations, which we must assume to be true, as would be done on demurrer, the plaintiff brought this action for the benefit of all creditors of James McHenry to reach the property in the hands of Perkins and Fowler, trustees, and to have that property applied *pro rata* to the payment of the indebtedness due by McHenry to himself and other creditors, on the ground that the transfer of his interest in the trust property originally by McHenry for the benefit of his wife and her appointees was fraudulent and void as against such creditors, and was made with the intent to hinder, delay and defraud them, and that all the various transfers of the property are affected by that fraud and the defendants are making an effort to remove the trust property from this jurisdiction without administration here and in disregard of the rights of creditors resident here.

The plaintiff's right to maintain the action as one to set aside fraudulent transfers is derived, if not from settled rules of law, then from statutory authority. Section 7 of the Personal Property Law of 1897 (Chap. 417), provides that an executor, administrator, receiver, assignee or trustee may, for the benefit of creditors or others interested in personal property held in trust, disaffirm, treat as void and resist any act done or transfer or agreement made in fraud of the rights of any creditor, including himself, interested in such estate or property, and a person who fraudulently receives, takes or in any manner interferes with personal property of a deceased person or an insolvent corporation, association, partnership or individual, is liable to such executor, administrator, receiver or trustee for the same or the value thereof, and for all damages caused by such act to the trust estate; and that a *creditor of a deceased insolvent debtor* having a claim against the estate of such debtor exceeding the amount of $100 may, *without obtaining judgment upon such claim,* in like manner, for the benefit of himself and other creditors interested in such estate, disaffirm, treat as void and resist any act

done or conveyance, transfer or agreement made in fraud of cred-
itors or maintain an action to set aside such act, conveyance, transfer
or agreement. Such claim, if disputed, *may be established in such
action.* The judgment in such action may provide for the sale of
the property involved, when a conveyance or transfer thereof is set
aside, and that the proceeds be brought into court or paid into the
proper Surrogate's Court to be administered according to law.

We think this statute gave the plaintiff authority to institute this
action in the aspect above mentioned, inasmuch as the trust estate
in the hands of the trustees here consists, at least in part, of per-
sonal property. The right of a creditor to maintain the action
seems to be separated from the remedy given to an executor or
administrator; but even if that were not so, it sufficiently appears
in the complaint for the purposes of this action that Mr. McHenry's
executors declined to take those steps which were necessary to enable
them to bring an action, for they refused to take out ancillary letters
or to have those letters taken out, and that would be necessary in
order to give them a standing in court to maintain an action.

As to the second ground upon which the complaint was dismissed,
namely, that the executors did in fact act and take possession of the
fund, and dispose of it for the benefit of the estate, that is not
shown by the complaint or the opening of counsel for the reason
that the fund does not consist of the certificates, but is the property
itself or its avails in the hands of the trustees, the certificates being
muniments of ownership of the beneficial interest in the trust prop-
erty. Although the parties to the trust deed did agree among
themselves that these certificates should be regarded for all pur-
poses as personal property, they could not impress upon them the
character of negotiability, nor change the inherent character of the
trust property in the hands of trustees. If the plaintiff has any
rights at all they are not limited to the certificates, but they attach
to the trust fund or trust property in the hands of the trustees. A
purchaser of the certificates only became a beneficiary of the trust,
and an assignee of an interest therein; but it is alleged in the com-
plaint that the sale was sanctioned by the English court, on the
assumption that the certificates and property were liable in the first
instance to the satisfaction of American debts secured by attach-
ment of the plaintiff. We think it may be spelled out from the

allegations of the complaint that it is charged that the purchaser of the certificates took them with notice.

Stated in a few words, the position assumed by the plaintiff under the allegations of the complaint, and the inferences which legitimately may be deduced therefrom, is this: He, on his own behalf and on behalf of other creditors, seeks to reach a fund in this State which is in the hands of trustees, in which fund his debtor was interested; that debtor made an assignment of that interest in the fund with the intent to hinder, delay and defeat his creditors, and all subsequent transfers are in fact and law affected by that fraud. Debts are, generally speaking, an equitable lien upon property fraudulently transferred by a debtor. (*Ocean National Bank* v. *Olcott*, 46 N. Y. 17.) What the plaintiff now seeks is to have the court, upon a showing that the facts exist which give the lien, recognize and enforce that lien.

It is true that there is in this complaint and the schedules annexed to it a great mass of matter which may be immaterial to the real cause of action, but when that cause of action is ascertained there may be culled from the allegations of the complaint a sufficient statement of it, and it seems to us that the only question remaining relates to *jurisdiction* having been acquired over the foreign executors of Mr. McHenry's will. That subject was not passed upon by the court at the trial so far as the record shows, but it was urged by the defendants' counsel that jurisdiction had not been obtained, and if that point is well taken, the action cannot be sustained.

Recurring to the complaint we find that it contains allegations beyond those which relate to the alleged fraudulent character of the transfer of Mr. McHenry's interest in the trust property, and which other allegations are set forth to give the court jurisdiction under extraordinary circumstances. It is alleged that there is a fund within this State which should be applied in equity to the payment of the creditors of Mr. McHenry, resident in this State, and that such fund cannot be reached through the ordinary processes of administration by reason of a defect in the law. No one can take out administration here except through or by the voluntary action of the foreign executors, Mr. McHenry having been a non-resident, dying abroad, testate. The fund may be withdrawn from this jurisdiction and the domestic creditors remain remediless unless a court

of equity to the extent that may be necessary for the purposes of this action, would undertake administration. It is true that so far as title to Mr. McHenry's interest in the trust fund and property is concerned, that may now be out of the executors and vested in Mr. Bischoffsheim, but Mr. McHenry's executors should be parties to the action because it is necessary for the plaintiffs to establish the *existence* of an indebtedness against their testator, and if that interest is subjected to the claims of resident creditors those executors may be liable over to their transferee of that interest.

It is not to be controverted that an action will not lie at law against foreign executors for the enforcement of a debt against their testator or to charge the estate in their hands with a liability of such testator growing out of a contract made by him, but suits in equity may be maintained against foreign executors under exceptional circumstances. (*Slatter* v. *Carroll*, 2 Sandf. Ch. 573. *McNamara* v. *Dwyer*, 7 Paige, 239; *Hopper* v. *Hopper*, 20 N. Y. St. Repr. 58; *Gulick* v. *Gulick*, 33 Barb. 96; *Marshall* v. *Bresler*, 1 How. Pr. [N. S.] 217; *Field* v. *Gibson*, 56 How. Pr. 232.) These cases are cited upon the proposition that foreign executors may be sued in equity under special circumstances, although with the exception of *Slatter* v. *Carroll* (*supra*), they have no direct bearing upon the right of the plaintiff to maintain this particular action. But what is the exact situation here? Unless this fund can be reached in a court of equity in this State, this plaintiff is without remedy and must be dismissed because of the impotency of the court to afford him relief, which is simply a confession of a failure of justice and of the inability of the State to protect its citizens in the enforcement of their conceded rights.

Here is property in the hands of the defendant trustees. Mr. McHenry's creditors have, as we have seen, an equitable lien on his interest in that trust fund. They claim under McHenry. It is a settled rule of law of this State that a domestic creditor of a non-resident decedent will not be compelled to go to a foreign jurisdiction if there be property here which can be applied to the satisfaction of his claim. We, therefore, assume the right to administer the property here for the benefit of domestic creditors and to impress upon it a lien or trust for their benefit. (*Maas* v. *German Savings Bank*, 73 App. Div. 524.) No claim is made generally

against the estate of Mr. McHenry; no judgment is sought which might be made the basis of an action in a foreign court against the executors, but their presence here is required simply because the existence of a debt must be proven to enable the plaintiff to set aside the alleged fraudulent conveyance by McHenry and to enable them to dispute the existence of an equitable lien upon this trust fund if they choose to do so. They have undertaken to dispose of a fund within this State without administration here. Their acts as executors, with respect to that fund within the jurisdiction of this court liable to resident creditors, are made the subject of inquiry. That a foreign executor could be made to account for assets brought within this jurisdiction, was held in some of the cases above cited. We see no reason why the same rule should not apply to assets which were here when the foreign executors might first have become entitled to them and which they left within this jurisdiction.

We think this case is to be regarded, under its peculiar facts, as an exceptional one, and such as would authorize the maintenance of a suit against the foreign executors, the right sought to be enforced in the action being one strictly limited to certain property within the jurisdiction of the court unadministered and which, for the purposes of justice, it is necessary for a court of equity to control. Both the executors of Mr. McHenry's estate were made parties to this suit; one of them has entered a general appearance and that is sufficient, under the provisions of section 1817 of the Code of Civil Procedure, to bind both of them.

No question can arise here of the constitutionality of section 7 of the Personal Property Law. *Dittmar* v. *Gould* (60 App. Div. 94) does not apply, and *Cates* v. *Allen* (149 U. S. 451) was decided solely upon the ground that the distinction between legal and equitable rights and remedies being rigidly maintained in the courts of the United States, a suit in equity by a general creditor to set aside fraudulent conveyances of his debtor could not be maintained in the United States courts, that remedy being available only to a judgment creditor. In the present case the McHenry executors would not be deprived of the right to a trial by jury of an issue, if they choose to raise it, respecting the existence of an indebtedness of McHenry to the plaintiff's assignors. If, as to that, they are entitled to a jury trial as a matter of right, section 970 of the

Code of Civil Procedure protects that right and requires the court, upon proper application, to make an order directing that method of trial, and the verdict of the jury on that issue would be conclusive in the action unless it be set aside or a new trial granted. Any objection to defect of parties defendant must be taken by demurrer.

We are, therefore, of the opinion that the judgment dismissing the complaint should be reversed and a new trial ordered, with costs to appellant to abide the event.

O'BRIEN and LAUGHLIN, JJ., concurred; VAN BRUNT, P. J., and McLAUGHLIN, J., dissented.

Judgment reversed, new trial ordered, costs to appellant to abide event.