In the Matter of: THE ESTATE OF MAGGIE G. PAINE, Deceased, C. H. WILLIAMS v. W. J. GARNETT, As Administrator *de bonis non* of the Estate of Maggie G. Paine, deceased.

174 So. 430.

Opinion Filed May 1, 1937.

Rehearing Denied June 2, 1937.

152

*McKay, Macfarlane, Jackson & Ramsey* and *Chester H. Ferguson,* for Appellant.

*Baskin, Jordan & Richards,* for Appellee.

PER CURIAM.—This is an appeal from an order of the Circuit Court affirming certain orders of the County Judge's Court, and denying a petition for rehearing. The orders of the County Judge's Court appealed to the Circuit Court were those orders sustaining certain objections made to the report of C. H. Williams, as Administrator of the Estate of Maggie G. Paine, deceased, denying a rehearing and entering judgment in favor of the Estate against C. H. Williams, former Administrator, in the sum of $4,269.17.

It appears that the First National Bank of St. Petersburg, Florida, was, on May 26, 1930, appointed Administrator of the Estate of Maggie G. Paine, deceased. Thereafter the First National Bank of St. Petersburg became insolvent, and Gertie M. Dickinson, Carrie M. Barker, George A. McElwain, Elizabeth T. Graves, Mamie T. Bassett, Lulu L. Goff, Nell O. Garnett and Jimmie Graves Thompson, nieces and nephews and next of kin of the deceased, petitioned the County Judge to remove the First National Bank of St. Petersburg as Administrator of the Estate and to appoint C. H. Williams of Hopkinsville, Kentucky, as Administrator. Whereupon the County Judge, on September 10, 1930, entered an order appointing C. H. Williams Administrator *de bonis non* of the Estate of Maggie G. Paine, deceased, and letters of administration were issued to him. Edgar H. Dunn of St. Petersburg was designated as the resident agent for the Administrator. Upon his appointment, C. H. Williams returned to his domicile in Kentucky, and carried with him or had forwarded to him the entire Estate, consisting of cash, notes, bonds, and jewelry, and

there proceeded to administer it without taking out ancillary proceedings.

On May 17, 1934, Lulu L. Goff, Florence DeBar, Elizabeth T. Graves, Jimmie G. Thompson, Nell Garnett, Mamie T. Bassett, George F. Thompson, James G. Thompson, Rebecca T. Crockett, Ruth T. Wilson and Rachel T. Griffin, heirs at law of Maggie G. Paine, deceased, file their petition praying that the court remove C. H. Williams as Administrator of the Estate and appoint W. J. Garnett of Pembroke, Kentucky, Administrator *de bonis non* of the Estate; that C. H. Williams be required to give an accounting; that he be required to pay the legal rate of interest on the money retained in his hands for an unreasonable period of time; that he be denied compensation as Administrator of the Estate because of his failure to properly administer it and file the proper reports.

The petition alleged that C. H. Williams, as Administrator has in his hands, after payment of all debts and costs of the Estate, a substantial sum of money and certain articles of personal property, consisting of shares of stock, jewelry, notes and other articles; that petitioners and other interested parties have repeatedly requested him to convert said assets into money so that it might be distributed, or that distribution be made in kind, but he has refused and still refuses to do either; that part of said property consists of stock in Planter's Bank & Trust Company of Hopkinsville, Kentucky, which petitioners and others frequently requested him to sell while market conditions were favorable, but he refused and still refuses to sell said stock, with the result that it is worth only about half of what it was worth when he was first requested to sell it; that said Administrator has failed to take steps to collect certain notes and money due the Estate which collection may become

impossible by reason of delay; that although more than three years have elapsed since said Administrator was appointed and received his letters of administration, yet he has not filed any report whatever; that his failure to properly administer the Estate and file his reports as required by law are without just cause or excuse; that upon his appointment he received approximately $9,000.00 in cash, which has been in his hands since that time; that upon information and belief petitioners allege that said Administrator paid out a substantial part of that money without receiving proper authority from this Court or otherwise; that petitioners believe said Administrator has paid out money on certain proper charges against the Estate, but have no knowledge of the amount because of his failure to file any reports; that said Administrator has had in his hands for more than three years a large sum of money belonging to the Estate.

The answer of the Administrator set up affirmative matter of defense by averring that although he was appointed Administrator in September, 1930, the money did not come into his hands until September, 1931, because of long drawn out litigation to establish the fact that the funds of the Estate on deposit with the defunct First National Bank of St. Petersburg were trust funds; that he made an effort to sell the stock of the Planter's Bank & Trust Company of Hopkinsville, Kentucky, but at that time a bitter campaign was going on between that bank and the other bank of Hopkinsville, the financial structure at Nashville, Tennessee, broke down, the National Bank of Kentucky at Louisville failed, and all demand for bank stock was cut off. The answer then alleged that Maggie G. Paine had, by a former marriage, been the wife of V. A. Garnett, who died and willed the major portion of his estate, both real and per-

sonal, to his widow, Maggie G. Paine, for life, and also made her Executrix of his will, that title could be traced from the intangibles of Garnett's Estate to much of the assets that came into the hands of C. H. Williams as Administrator of the Paine Estate; that said widow afterwards married a Mr. Paine; that on December 23, 1930, a writ of garnishment was served on C. H. Williams as Administrator of the Estate, and concurrently a suit was filed attacking the validity of the claim of the Paine Estate to any of the property, contending that all assets in the hands of C. H. Williams, as Administrator of the Paine Estate, was in fact property of the remaindermen under the will of V. A. Garnett, and it was found during the course of the litigation that Maggie G. Paine had not filed with the court a settlement showing what portion of the property came into her hands through the will of V. A. Garnett, which after her death was to go to other persons; that in this case a judgment of $2500.00 was rendered in favor of plaintiffs against C. H. Williams as Administrator of the Paine Estate; that the attorney's fees were not decided upon until the current year, after final disposition of the matter; that plaintiffs contended in that case that the moneys on deposit in the First National Bank of St. Petersburg to the credit of the Paine Estate were proceeds from the sale of stock in the bank of Hopkinsville, Kentucky, which originally belonged to V. A. Garnett, this contention being substantiated by the records of said bank as to fourteen of said shares, but the status of the remaining shares of the stock of the Planters Bank & Trust Company was also doubtful and it is contended that they were bought with money belonging to the Garnett Estate. The answer then set up the defense that another suit was filed against C. H. Williams as Administrator of the Estate of Maggie G.

Paine, deceased, alleging that Maggie G. Paine, during her life tenancy of certain lands, cut timber therefrom, which was not for the upkeep of the property, and a judgment for $425.00 was entered in favor of the remaindermen under the Garnett will. The answer set up the further defense that C. H. Williams made an earnest effort to sell the various properties and collect the debts due the estate, but without avail; that prior to the filing of the petition herein, suit was instituted against Mamie T. Bassett to foreclose a lien on certain property for the amount of $7500.00; that the Administrator is anxious to close the estate and recently determined to get a court order directing him to sell the stocks belonging to the estate but ran into difficulties and was blocked from carrying out that plan.

Then followed the Administrator's reports, listing the assets of the Estate that he received and that have come in since his appointment, and the expenditures and disbursements made from those assets.

The heirs of Maggie G. Paine then filed their exceptions to the report of the Administrator, objecting to certain items given in the report. General objections were filed to the report as an entirety because C. H. Williams as Administrator paid the vouchers without any authority from the County Judge of Pinellas County; that he never applied to the court for authority to make any of the disbursements; that he did not file his report within the time allowed by law; that he made each of the payments arbitrarily with a total disregard for the laws of the State of Florida and the authority of the County Judge's Court of Pinellas County; that from September, 1930, to June, 1934, the Estate had a cash balance running as high as $9,000.00, and at present amounting to $2,388.33, according to the report; that if this money was deposited so as to draw interest, the re-

ceipts should show it, and if not so deposited, the Administrator is properly chargeable with the amount the Estate should have received as interest on said funds.

Trial of the issues was had before the County Judge of Pinellas County on September 12, 1934, after which the court entered its order approving the report of the Administrator except as to the following items, which were not allowed.

"Voucher No. | To Whom Paid | Amount
---|---|---
19 | C. H. Williams | $350.00
23 | James Breathitt, Jr. | 250.00
24 | James Breathitt, Jr. | 250.00
25 | John C. Duffy, attorney, and Helen Morehead Layne | 106.25
26 | John C. Duffy and Clarence G. Morehead | 212.50
27 | John C. Duffy and James W. Morehead | 106.25
29 | S. Y. Trimble, Trustee | 2500.00
30 | R. A. Craft, Circuit Clerk | 41.17
31 | Mrs. Mary W. Keller | 3.00
33 | James Breathitt, Jr. | 200.00
40 | White & Clark | 250.00

"All other objections are overuled, and the report otherwise approved."

The Administrator filed his petition for rehearing in which he set out in detail what each voucher disallowed by the court was spent for. He requested that the order, disallowing these payments, be vacated, because the payments accrued either directly or indirectly by reason of actions instituted in Kentucky, upon which valid judgments were obtained against petitioner-Administrator; be-

cause said payments were not made from the assets of the Estate of Maggie G. Paine, but from assets in petitioner's hand belonging to certain beneficiaries named in the last will and testament of V. A. Garnett, the husband of Maggie G. Paine prior to her marriage to Dr. Paine; because said order attempts to require petitioner to pay his successor in trust, funds that do not comprise part of the Estate of Maggie G. Paine; and because said order is contrary to law.

The court denied the petition for rehearing and ordered that final judgment for $4269.17 be entered in favor of the petitioning heirs against C. H. Williams, former Administrator; and directing him to pay over to W. J. Garnett, the Administrator, the sum of $4269.17.

C. H. Williams took an appeal to the Circuit Court, which court affirmed the orders of the County Judge's Court appealed from.

Petition for rehearing and reargument of the cause was denied by the Circuit Court.

From these two orders of the Circuit Court the former Administrator, C. H. Williams, took an appeal to the Supreme Court.

The first question presented is whether an administrator forfeits all of the compensation allowed to him by law because he fails to file his annual returns as required by statute?

The Court in denying C. H. Williams compensation for his services stated that under Section 5546 C. G. L., the administrator precluded himself from receiving any compensation for his services and forfeited all commissions by reason of the fact that he did not make annual accountings as required by law.

Section 5546 C. G. L. provides that administrators, un-

less otherwise ordered by the court, shall make their annual returns on the first day of June in every year, unless appointed after January first and before June first, then the first annual return may not be filed until the first of June of the second year after the appointment. Then the statute provides:

"If they fail to make such returns before such time, they shall forfeit all commissions on such returns so to be made."

Section 5541 C. G. L. provides as follows:

"Executors and administrators shall be allowed all reasonable charges on account of disbursement for funeral expenses, and in the administration of the estate of the person deceased, and shall also be allowed a just and fair compensation for their services, and also a compensation not exceeding six per cent on money arising from the sale of personal property and lands of the deceased."

In the case of Shepard's Heirs v. Shepard's Administrator, 19 Fla. 300, this statute was construed to give to the administrator four different kinds of allowances or compensation, which are as follows: (1) reasonable charges on account of funeral expenses; (2) reasonable charges incurred in the administration of the decedent's estate; (3) fair and just compensation for his services and (4) compensation not exceeding 6% on money arising from the sale of real and personal property of the decedent.

In the case of Sanderson, Administrator, v. Sanderson, 20 Fla. 292, the statute, now Section 5546 C. G. L., forfeiting the commissions of the administrator, upon his failure to file his annual report, was interpreted. The court said at page 319:

"We do not understand the statute to provide for any forfeiture except in the case of neglect of the administrator 'to render' his annual account to the county court, and the

forfeiture there does not extend beyond commissions on amounts collected or disbursed and approved and allowed."

Thus only the fourth class of compensation is forfeited when the administrator fails to file his report pursuant to the provisions of Section 5546 C. G. L. The administrator would be entitled to receive compensation or allowances under the first three heads enumerated, even though he failed to file his annual report on time, unless there be other legal reasons why he should not be so entitled. The report of the Administrator showed and the testimony likewise revealed that the Administrator was entitled to some compensation for his services in procuring by court action the sum of $8971.37 as a preferred claim from the Receiver of the defunct First National Bank of St. Petersburg. There may have been other services such as the sale of Hopkinsville Milling Company stock for $675.00, the receipt of a cash balance in the Bank of Pembroke, Pembroke, Kentucky, of $426.03, and the receipt of refund on farm insurance of $3.30, for which the Administrator should be compensated. Then there is the consideration to be taken into account by the court, that the Administrator did not give proper attention to his duties, so that the value of his services in the first instance would be nullified. In that event, it is in the discretion of the court to refuse to allow him compensation for his services. See Eppinger Russell & Co. v. Canepa, 20 Fla. 262; Schouler on Wills, Executors & Administrators, 6th ed. Vol. 4, Sec. 3049.

The second question presented is whether the amounts paid by the Administrator as fees to attorneys to defend suits brought against him, should be allowed as a credit to him?

An administrator may employ counsel, when necessary or proper to protect the estate, or to enable him properly to

manage it, and the reasonable charges for such service will be paid out of the estate, in the settlement of the administrator's account. Brickell v. McCaskill, 90 Fla. 441, 106 Sou. 470. This allowance should be made when these facts exist, even though the administrator has mismanaged the estate, where the element of mismanagement may be taken care of by the court in determining as above set forth in Eppinger Russell v. Canepa, 20 Fla. 262, that the administrator is not entitled to any compensation.

The county judge refused to allow the administrator credit for any sum paid to attorneys who represented him in the handling of the estate's affairs. It seems that where suits are instituted, in good faith, against an administrator in his representative capacity, he has no alternative than to employ counsel to defend those suits. However, if the court finds that the suits were collusive and not properly defended, but were part of a pre-arranged transaction between both parties and attorneys to have the record show that a judgment was entered against the defendant, then the attorneys would not be entitled to any compensation, and the administrator would not be entitled to allowance for the amounts so paid. The trial court must determine whether, under the circumstances, the employment of counsel was for the purpose of protecting the estate, and, if so, whether the fees paid were reasonable for the services rendered.

The third, fourth and fifth questions presented are argued together and present the query as to whether judgments rendered against a foreign administrator in the courts of the State of his residence instead of the courts of the State of his appointment, determining the ownership of property within the State of his residence, are entitled to recognition in the State of his appointment, under the full

faith and credit clause of the Constitution of the United States?

Payments by the administrator that were disallowed by the County Judge were disallowed under the theory that judgments rendered in Kentucky against an administrator appointed by a Florida court, though a resident of Kentucky, were void, and that there was no duty on the part of the administrator to discharge them by payment, and that such conduct on his part was waste of the assets of the estate.

The record shows that the residuary devisees under the Garnett will brought their bill of complaint in Kentucky against C. H. Williams, as Administrator of the Estate of Maggie G. Paine, deceased, to recover assets in his possession purporting to belong to the Paine Estate, but which were alleged to belong to the devisees under the Garnett will. Williams was served with process and later filed his answer thereto. Thereafter it was stipulated by the parties that certain assets in the hands of Williams constituted property of the Garnett Estate, and a consent judgment for $2500.00 was entered in favor of plaintiffs against Williams as Administrator of the Paine Estate. The court also decreed that James Breathitt, Jr., and the firm of White and Clark be paid $250.00 each as counsel fees. These amounts were paid by Williams from the assets of the Paine Estate. For the alleged waste of timber lands by Maggie G. Paine during her lifetime, when she had only a life interest therein, another consent judgment for $425.00 was entered in favor of the heirs under the Garnett will against Williams as Administrator of the Paine Estate, and he also paid this judgment from the assets of the Paine Estate.

In each of these cases the petition contained a false statement in alleging that C. H. Williams was appointed

Administrator of the Paine Estate by the Christian County Court in Kentucky, when in fact he was appointed such Administrator by the County Judge's Court of Pinellas County, Florida. This allegation was inserted in the petitions to confer jurisdiction on the Kentucky courts.

In the suit resulting in entry of consent judgment in the amount of $2500.00 against the Paine Estate, the Administrator did not deny the allegation of the petition that he was appointed Administrator of the Paine Estate in Kentucky. This lax conduct on the part of the Administrator has the appearance of an attempt on his part to jeopardize the interests of the Paine Estate by permitting the assets of the Estate to be bargained away by consent judgments rather than have the issues tried by the court.

The petition in the case resulting in entry of a consent judgment against the Paine Estate in the amount of $425.00 alleged that Mrs. Paine died in Kentucky, whereas she died in Florida, and also alleged that there was no property in the estate subject to execution and that the estate is probably insolvent, all of which allegations were untrue.

"The general rule is that an executor or administrator appointed in one jurisdiction cannot be sued in his representative capacity in any other jurisdiction." 24 C. J. 1136, Sec. 2720.

Exceptions to the above rule have been made in a number of cases, but the exceptions are not universally recognized.

Practically all of these exceptions to the general rule have been in suits in equity involving peculiar circumstances, Finley v. Keinningham, 25 Ky. L. 1955, 79 S. W. 236; Hussy v. Sargent, 116 Ky. 53, 75 S. W. 211, 25 Ky. L. 315; Keinningham v. Keinningham, 24 Ky. L. 1330, 71 S. W. 497; Baker v. Smith, 3 Metc. 264; Manion v. Titsworth,

18 B. Mon. 582; Atchison v. Linsey, 6 B. Mon. 86, 43 D. 153; Curle v. Moor, 1 Dana 445; Dorsey v. Dorsey, 5 J. J. Marsh 280, 22 Am. D. 33, where the suit was permitted, of necessity, to prevent a failure of justice. Colbert v. Daniel, 32 Ala. 314; Bergmann v. Lord, 194 N. Y. 70, 85 N. E. 828; Montgomery v. Boyd, 78 App. Div. 64, 79 N. Y. S. 879; McNamara v. Dwyer, 7 Paige (N. Y.) 239, 32 Am. D. 627.

Such suits have been maintained where a foreign representative came into another jurisdiction and brought with him assets from the jurisdiction of his appointment, McNamara v. Dwyer, 7 Paige (N. Y.) 239; Calhoun v. King, 5 Ala. 523; Julian v. Reynolds, 8 Ala. 680, or where he left the jurisdiction of his appointment and became a resident of another jurisdiction. Courtney v. Pradt, 160 Fed. 561; Manion v. Titsworth, 18 B. Mon. (Ky.) 582; Keinningham v. Keinningham, 24 Ky. L. 1330, 71 S. W. 487. In such case a bill in equity will lie to compel him to account for such assets to the persons lawfully entitled thereto, where but for the interference of the court of equity there would manifestly be a failure of justice. Colbert v. Daniel, 32 Ala. 314; Hussey v. Sargent, 116 Ky. 53, 75 S. W. 211, 25 Ky. L. 315. To authorize this proceeding, it must appear that the administrator has assets within the jurisdiction of the court, and is accountable to the complaining party under a will or as a trustee *ex maleficio*. Lewis v. Parrish, 115 Fed. 285, 53 C. C. A. 77; Marcy v. Marcy, 32 Conn. 308; Campbell v. Tousey, 7 Cou. (N. Y.) 64; Dillard v. Harris, 2 Tenn. Ch. 196. But a creditor is not entitled to sue under such circumstances. Baker v. Smith, 3 Metc. (Ky.) 264; Hedenberg v. Hedenberg, 46 Conn. 30, 33 Am. R. 10.

"The principle that executors and administrators are not

liable to actions as such in States where they have obtained no letters is not permitted to protect them against the consequences of their own wrong or default. Thus where an executor or administrator removes the property of the estate in his charge, without having completed the administration, to another State, and fails to obtain new letters of administration there, a court of equity will grant relief to any person whose interest is thereby jeopardized, on the ground that, where a trust fund is in danger of being wasted or misapplied, the court of chancery, on the application of those interested, will interfere to protect the fund from loss. The exercise of this authority is in no way inconsistent with the general principle announced as governing the powers and liabilities of executors and administrators, who, as such, derive their powers from, and are amenable only to, the forum of the State under whose laws they hold office. They are in such proceeding treated, not in their official capacity, which is coextensive only with the State in which they receive their appointment, but as persons who, by withdrawing themselves from the jurisdiction of the court having power over them, are unlawfully in possession of the property which is to be protected or adjudged to its lawful owner. 'This is not a suit against the administrator for a debt due from the estate, but it is an assertion of title to the property itself, which, being found in this State, will give the court jurisdiction.' " Woerner—The American Law of Administration, Vol. 1, Sec. 164, p. 571 (3rd ed.).

An administrator or executor who is appointed or qualified in another State, and there receives assets in his hands may be sued in the tribunals of the State of Kentucky by persons entitled to such assets if he shall have removed to and settled in Kentucky. Manion's Administrator v. Tits-

worth, 18 B. Mon. 582; Husset v. Sargent, 116 Ky. 53, 75 S. W. 211; Keinningham v. Keinningham, 24 Ky. L. 1330, 71 S. W. 497. Where suit against a foreign administrator is allowed, his liability will be determined by the laws of the State of his appointment and not of the State in which he was sued. Manion v. Titsworth, 18 B. Mon. (Ky.) 582; McNamara v. Dwyer, 7 Paige (N. Y.) 239, 32 Am. D. 267.

Under the rules as laid down above, it appears that the suit instituted for the purpose of having certain property in the hands of C. H. Williams, as Administrator of the Paine Estate, declared to be property of the Garnett Estate, might properly have been instituted and maintained in the courts of the State of Kentucky, because the property, ownership of which is claimed by the remaindermen under the Garnett will, and the Administrator were both physically in the State of Kentucky, and the suit was against the Administrator and the Bank, whose stock was involved; provided the final decree in that case was for the return of the property in specie or the payment of the amount of money received from the sale of that property, if it had in fact been sold, and the money had been reasonably identified as being the proceeds from the sale. Otherwise the courts of Kentucky would not have jurisdiction of the case. The laws of Kentucky govern as to whether the suit may be brought or maintained; but the laws of Florida govern as to the liability of the Administrator. The payment of this judgment by the Administrator should have been allowed on the final accounting if these facts were found to exist.

The suit instituted against the administrator to recover damages for the conduct of the life tenant, Mrs. Maggie G.

Paine, cutting timber from certain lands, which timber was not used for the upkeep of the place, the suit terminating in a consent judgment in favor of the heirs under the Garnett will, was not a claim maintainable in the State of Kentucky under any of the foregoing rules. It was not a claim made under any will that was being administered by Williams, was not a claim against Williams as trustee *ex maleficio,* was not a claim for specific property in the hands of Williams in the State of Kentucky; but was, on the contrary, a claim for damages, for the conduct of the life tenant, Mrs. Maggie G. Paine, which was a claim by a creditor of the Paine Estate, and such case, under the Kentucky law, was not, in these circumstances, maintainable in the courts of Kentucky as an exception to the general rule. This was a local action because it was for damages to the freehold, and was maintainable, if at all, only by taking out ancillary administration of the Paine Estate in Kentucky.

"A tenant for life without impeachment for waste may cut wood though such cutting would otherwise, at the common law, amount to waste. In other words, he may do any act with reference to woodland that the owner of the fee might do, being restrained only from the commission of willful and malicious waste. He may thin out the timber of a wood's pasturage, or cut off all the timber and cultivate it as a field. If the cutting is not wanton or malicious, and does not amount to equitable waste, it cannot be restrained by the owner of the fee, even if he sells the timber. But even a tenant for life without impeachment for waste may not cut down trees left or planted for ornament or shelter, the question whether the particular timber does answer that description being one of fact, and effect being

given to the design of the testator as to what is ornamental."
27 R. C. L. 1030, Sec. 19.

Therefore the entry in this case of the consent judgment
against Williams as Administrator of the Paine Estate was
without authority of law of the Kentucky courts, and the
County Judge of Pinellas County, Florida, correctly refused
to allow payment of this judgment as a proper charge against
the Paine Estate.

Appellant argued the sixth and seventh question together,
which present the question as to whether an administrator
may compromise and settle a valid and subsisting indebted-
ness against the estate, especially when authorized to do so
by the beneficiaries of the estate.

This question embodies two separate propositions: first,
that the administrator had the power in these circumstances
to compromise the two suits instituted against him in his
representative capacity and agree to the entry of judgments
in conformity with the compromise, and second, that the
heirs of Maggie G. Paine agreed to accept the consent judg-
ments as binding on the Estate in both cases.

In support of the proposition that the heirs had agreed
to the compromise made, appellant quotes testimony in his
brief, which he states is all of the evidence on the subject.
This evidence shows that Mr. Breathitt, attorney for ap-
pellant in Kentucky, testified that Dr. Bassett, in under-
taking to speak for a great number of heirs, agreed to the
settlement. Mr. Richeson said, while cross-examining Mr.
Breathitt, that he was induced to agree to this because he
was informed that C. H. Williams was administering the
Paine Estate in Kentucky, which information Mr. Breathitt
did not recall. Mr. Richeson stated that he and Mrs. Lulu
Goff were in the office of Mr. Breathitt in Kentucky in
September, 1932, and had a conversation about this suit.

There is no showing made by this evidence that all or even a majority of those interested in the matter agreed to the entry of a compromise judgment in either suit that would bind them. The most that is shown is that Mr. Breathitt referring to the $2,500.00 judgment testified that Dr. Bassett, who was representing a great number of the heirs, agreed to the entry of that judgment.

The power of an administrator or executor to compromise claims is stated in the following language in 11 R. C. L. 202, Sec. 225:

"At common law the executor and administrator, having an absolute power of disposal over the whole of the personal effects of a decedent, had authority to compromise or accept any composition or otherwise settle any debt, claim, or thing whatsoever in regard thereto. And he still has such powers in this connection that his compromise of a claim against the estate will be upheld if it is *fair, beneficial to the estate,* and *free from fraud, negligence* or *misconduct.* The same is true as to claims belonging to the estate." (Emphasis supplied.)

Thus it is seen that the administrator had the power to compromise these suits if such compromises were fair, beneficial to the estate and free from fraud, negligence or misconduct. Under this rule, the administrator had no authority to compromise the suit in which judgment for $425.00 was entered against him in his representative capacity, because it would not be beneficial to the estate to have a judgment entered against it, when the courts of the State of Kentucky were without jurisdiction to entertain suit upon which the judgment was entered. In the other suit in which a consent judgment was entered against the Administrator in his representative capacity for $2,500.00, the Administrator had authority to compromise that claim

if it was fair, beneficial to the estate and free from fraud, negligence and misconduct.

The trial court must determine this, after it has determined whether the suit is maintainable against the administrator in Kentucky, in these particular circumstances, under the rule as set forth in another part of this opinion.

The orders of the Circuit Court appealed from are reversed and the cause is remanded with directions that the Circuit Court order the County Judge's Court to entertain such further proceedings as will conform to the views expressed in this opinion.

It is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.